## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM J. COST,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:18-1494** |
| **v.** | : | **(JUDGE MANNION)** |
| **BOROUGH OF DICKSON CITY,** and **MICHAEL RANAKOSKI,** | : | |
| | : | |
| **Defendants** | | |

===========================================================

| | |
|---|---|
| **WILLIAM J. COST, JR.,** | : |
| **Plaintiff** | : |
| **v.** | : |
| **BOROUGH OF DICKSON CITY, MICHAEL RANAKOSKI,** and **MICHAEL McMORROW** | : |
| | : |
| **Defendants** | : |

## <u>MEMORANDUM[1]</u>

Presently before the court is a motion for partial summary judgment filed by the plaintiffs William J. Cost, Sr. ("Cost, Sr.") and William J. Cost, Jr. ("Cost, Jr."), (collectively, "Plaintiffs"), (Doc. 17), and a motion for summary judgment filed by the defendants the Borough of Dickson City ("Dickson

---

[1] By order dated July 31, 2018, this case was consolidated with *Cost v. Borough of Dickson City and Michael Ranakoski*, No. 3:18-1510. (Doc. 3).

City"), Officer Michael Ranakoski, and Officer Michael McMorrow, (collectively, "Defendants"), (Doc. 24). For the reasons set forth below, Plaintiffs' motion for partial summary judgment will be **DENIED**, and Defendants' motion for summary judgment will be **GRANTED** with respect to the federal claims in Counts I, II, IV, V, and VI.

I. **BACKGROUND**[2]

The suit stems from an incident that occurred on September 3, 2016. At approximately 8:00 p.m., a neighbor of the Plaintiffs, Renee Giedieviells reported hearing yelling, screaming, and arguing coming from Plaintiffs' residence. Ms. Giedieviells also reported hearing a female screaming "Help! Help!", at which point she called 911. The police incident report indicated the following: "male[/]female verbal dome[stic]," "children on scene someone is crying," "caller unkn[own] if weapons or not." (Doc. 25-3, at 6). Officer Ranakoski and Officer McMorrow ("the Officers") of the Dickson City Police Department responded to the call. When they arrived on scene, both Officers reported hearing yelling and a female shouting "stop" inside the residence, but everything became quiet when they approached the front door. The

_____

[2] These facts are derived from the parties' statements of fact and the record. The court only includes facts material to the issues in the case, and it does not include legal conclusions.

Officers knocked on the front and side door for several minutes and identified themselves as the Dickson City Police; however, they received no response.

Officer Ranakoski testified that, despite not hearing anything from inside the house, he "[a]bsolutely" believed someone was in need of help due to details of the 911 call—in particular that children were screaming—and because he heard a female yelling "stop." Officer Ranakoski explained, "At th[at] point we had to assume the worst. Somebody could have been tied up and unconscious and unable to shout for help." (Doc. 25-7, at 15).

 While Officer Ranakoski continued to knock on the door, Officer McMorrow phoned their chief of police seeking guidance. The chief agreed that exigent circumstances existed and, "for the safety of the person that the neighbor heard screaming, and the woman that we heard scream 'stop,'" that forced entry was "necessary to protect the people inside for their own well[-]being." (Doc. 25-7, at 11).

After knocking and announcing several more times and indicating that they would force entry if they were not met at the door, Officer Ranakoski forced the side door open. Upon entry, the officers observed both Cost, Sr. and Cost, Jr. sitting at their kitchen table, at which point they ordered Plaintiffs on their knees, and Officer Ranakoski handcuffed them and patted them down.

One of the officers, though it is not clear who, went upstairs and encountered Heather Rought ("Rought"), Cost, Sr.'s wife, as well as their ten-year-old son and fourteen-year-old daughter. Rought was brought downstairs and Officer McMorrow interviewed her. Rought stated that Cost, Sr. and their daughter had been arguing over a cell phone and, when police arrived, she went upstairs with the two younger children. Rought stated she did hear the Officers banging on the door, but she did not want to leave her children alone upstairs. Rought acknowledged that the argument was loud and that it lasted approximately thirty minutes; however, she attested that she personally "never screamed 'Help! Help!' or "Stop! Stop!' on 9/3/2016." (Doc. 47, at 2).

Meanwhile, Plaintiffs were asked about their identities. Cost, Jr. identified himself and was released from the handcuffs. Cost, Sr. refused to identify himself and consequently was put in a police car to be transported to the Lackawanna County Processing Center to be fingerprinted for a suspect identification. After Officer Ranakoski conferred with Officer McMorrow and he related what Rought told him about the fight, Cost, Sr., was placed under arrest for disorderly conduct pursuant to 18 Pa.C.S. §5503(a)(4). Upon arrival at the processing center, Cost, Sr. identified himself and was released. On November 7, 2016, the citation was dismissed after Officer Ranakoski failed to appear for the hearing.

Plaintiffs separately brought suit against Defendants, though their complaints are nearly identical. In Count I, Plaintiffs allege an unlawful search and seizure claim under the Fourth and Fourteenth Amendments against all Defendants. In Count II, they allege a Fourth Amendment excessive force claim against all Defendants. In Count III, they allege a state law assault and battery claim against the Officers.[3] In Count IV, they allege a Fourth Amendment and state law false arrest and false imprisonment claim against all Defendants. In Count V, Cost, Sr. alone alleges a Fourth Amendment and state law malicious prosecution claim against all Defendants. Finally, in Count VI, Plaintiffs allege an inadequate supervision and training claim against Dickson City.

On February 5, 2019, Plaintiffs filed their motion for partial summary judgment, (Doc. 17), a statement of facts, (Doc. 18), and a brief in support, (Doc. 22). Defendants filed an answer to the statement of facts, (Doc. 29), and a brief in opposition, (Doc. 35). Plaintiffs filed a reply brief. (Doc. 40).

On February 19, 2019, Defendants filed their motion for summary judgment, (Doc. 24), a statement of facts, (Doc. 25), and a brief in support, (Doc. 39). Plaintiffs filed an answer to the statement of facts, (Doc. 43), and a brief in opposition, (Doc. 46). Defendants filed a reply brief. (Doc. 48).

---

[3] Cost, Sr.'s claim is against Officer Ranakoski only.

On February 20, 2019, Plaintiffs filed a motion to strike Defendants' statement of facts because it included the affidavits of two neighbors, Renee and Michael Giedieviells, who witnessed the events of September 3, 2016, because Plaintiffs claimed they were not previously disclosed. By separate memorandum and order, the court granted the motion to strike the affidavits but permitted Defendants fourteen days to cure the deficiencies noted. (Doc. 49; Doc. 50).

Defendants did so by filing an amended statement of facts with corrected affidavits on March 31, 2020. (Doc. 51). However, that same day, Plaintiffs' counsel filed a letter arguing that the affidavits "provide nothing to assist the Court since neither new affidavit states that the information personally known was given to any of the arresting police officers." (Doc. 52).[4] On April 3, 2020, Defendants filed a motion to strike the letter from Plaintiffs' counsel, (Doc. 54), as well as a brief in support on April 16, 2020, (Doc. 55).

---

[4] Plaintiffs also filed an answer to the amended statement of facts objecting to both affidavits. (Doc. 53). Plaintiffs objected to Renee Giedieviells's affidavit, arguing that it is "meaningless on the issue of probable cause and/or exigent circumstances" because she did does not attest that she spoke to any of the Defendants on the night of the incident. (Doc. 53, at 1). Plaintiffs objected to the affidavit of Michael Giedieviells arguing, once again, that he "was not disclosed during discovery," and that the affidavit is likewise meaningless. (Doc. 53, at 2).

Plaintiffs' filed a brief in opposition, (Doc. 56), and Defendants filed a reply brief, (Doc. 57).

## II.   STANDARD

"Summary judgment is appropriate when, drawing all reasonable inferences in favor of the nonmoving party, the movant shows that there is no genuine dispute as to any material fact, and thus the movant is entitled to judgment as a matter of law." *Minarsky v. Susquehanna Cty.*, 895 F.3d 303, 309 (3d Cir. 2018) (internal quotation marks omitted). "A dispute is genuine if a reasonable trier-of-fact could find in favor of the non-movant, and material if it could affect the outcome of the case." *Bradley v. West Chester Univ. of Pa. State Sys. of Higher Educ.*, 880 F.3d 643, 650 (3d Cir.) (internal quotation marks omitted), *cert. denied*, 139 S.Ct. 167 (2018). In considering a motion for summary judgment, "the court need consider only the cited materials, but it may consider other materials in the record." Fed.R.Civ.P. 56(c)(3).

## III.   DISCUSSION

### A. Motion to Strike Plaintiff's Counsel Letter

In this motion, Defendants argue that, because counsel's letter contains additional factual and legal argument independent of Plaintiffs' brief in opposition and response to the Defendants' statement of facts, it is prohibited

- 7 -

under the Local Rules. In the alternative, Defendants ask that they be permitted an opportunity to respond to the additional arguments.

Plaintiffs filed a brief in opposition, arguing that the letter is permissible because, according to this court's website, the undersigned judge allows written correspondence from counsel via the court's electronic filing system. (Doc. 56). Defendants respond, arguing that a statement regarding the court's written communication preferences does not equate to a green light for parties to add additional argument on a motion for summary judgment by letter. (Doc. 57).

The court agrees with Defendants and will **STRIKE** counsel's letter, (Doc. 52), from the record. Aside from the fact that such a filing is not authorized under either the Federal Rules of Civil Procedure or the Local Rules, it is repetitious of the arguments previously set forth in Plaintiffs' briefs. *See* Fed.R.Civ.P. 12(f) (permitting the court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter.").

## B. Motions for Summary Judgment and Partial Summary Judgment

Plaintiffs have chosen to move for summary judgment by "Point" instead of by "Count," thus making it difficult for the court to ascertain which Counts—and for which of the Plaintiffs—they seek the entry of judgment.

Nevertheless, upon close review, it appears that Plaintiffs seek summary judgment as to both Plaintiffs on Counts I, IV, VI and for Cost, Sr. on Count V. Because Defendants have moved for summary judgment on all Counts, the court will analyze each Count individually and note the instances where Plaintiffs also move for summary judgment.

Initially, however, the court notes that Plaintiffs bring their Count I unlawful seizure and search claims against Defendants under both the Fourteenth Amendment Due Process Clause and the Fourth Amendment, alleging that their arrest and the use of force constituted a deprivation of due process. Because the Fourth Amendment covers their stated claims, Plaintiffs' Fourteenth Amendment claims, as standalone claims, must be dismissed under the "more-specific provision rule." "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing the claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotation marks omitted). *See also Lawson v. City of Coatsville*, 42 F.Supp.3d 664, 675-76 (E.D.Pa. 2014) ("[W]here the Fourth Amendment covers alleged misconduct—such as searches and seizures without probable cause—a plaintiff's claims must be analyzed under the Fourth

Amendment, not under the rubric of substantive due process."). Accordingly, Plaintiffs' Count I claims under the Fourteenth Amendment are **DISMISSED**.

### 1. Count I: Unlawful Search and Seizure; Count IV: False Arrest/False Imprisonment; Count V: Malicious Prosecution

Because the warrantless entry into the home and the arrest of Cost, Sr. were supported by probable cause and the detention of Cost, Jr. by reasonable suspicion, and because each of Plaintiffs' Fourth Amendment claims hinge on a lack of probable cause or reasonable suspicion, the entry of summary judgment in favor of Defendants is appropriate on Counts I, IV, and V.

"The threshold question for each of [Plaintiffs'] Fourth Amendment claims [under §1983 for unlawful search and seizure, false arrest/false imprisonment, and malicious prosecution] is whether [Defendants] had probable cause to arrest [Cost, Sr.]"—or, in the case of Cost, Jr., reasonable suspicion to detain him. *Lawson*, 42 F.Supp.3d at 673 (citing *James v. City of Wilkes-Barre*, 700 F.3d 675, 680, 683 (3d Cir. 2012) "To establish a false imprisonment or arrest claim, a detention must be unlawful, and to establish a malicious prosecution claim, there must be an absence of probable cause to arrest. Accordingly, probable cause defeats a claim for malicious prosecution and for false imprisonment or arrest." *Sheedy v. City of*

*Philadelphia*, 184 Fed.App'x 282, 284 (3d Cir. 2006) (internal citations omitted). *See also James*, 700 F.3d at 680, 683 (lack of probable cause is an element of a Fourth Amendment false arrest claim); *Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007) (lack of probable cause is an element of a Fourth Amendment malicious prosecution claim); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) (lack of probable cause is an element of a Fourth Amendment false imprisonment claim based on detention pursuant to an unlawful arrest); *Henry v. United States*, 361 U.S. 98, 102 (1959) ("[I]f an arrest without a warrant is to support an incidental search, it must be made with probable cause.").

"[A]n arrest requires probable cause." *Arditi v. Subers*, 216 F.Supp.3d 544, 552 (E.D.Pa. 2016). "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000). *See also Lawson*, 42 F.Supp.3d at 673 ("An arrest was made with probable cause if 'at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge . . . were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense.'" (internal

quotation marks omitted)). "In conducting an inquiry into whether probable cause to arrest existed, a court should consider the totality of the circumstances presented, and 'must assess the knowledge and information which the officers possessed at the time of arrest, coupled with the factual occurrences immediately precipitating the arrest.'" *Price*, 2016 WL 3876442, at *5  (citing *United States v. Stubbs*, 281 F.3d 109, 122 (3d Cir. 2002)).

Further, "the probable cause standard does not turn on the actual guilt or innocence of the arrestee, but rather, whether the arresting officer reasonably believed that the arrestee had committed the crime." *Arditi*, 216 F.Supp.3d at 552. *See also Lawson*, 42 F.Supp.3d at 674 ("In other words, the constitutional validity of the arrest does not depend on whether the suspect actually committed any crime.").

Similarly, where a plaintiff's detention is lawful because it is supported by reasonable suspicion, he cannot succeed on a false arrest/false imprisonment claim. *See Gwynn v. City of Philadelphia*, 719 F.3d 295, 304 n.4 (3d Cir. 2013) (noting that to succeed on a false imprisonment claim, a plaintiff must show that the detention was unlawful); *Waters v. Madson*, 921 F.3d 725, 743 (8th Cir. 2019) (holding a plaintiff's claim for false arrest was properly dismissed where an officer temporarily detained the plaintiffs pursuant to reasonable suspicion and therefore the officers "acted with

proper legal authority"). Reasonable suspicion "requires less than probable cause, but there must be at least a minimal level of objective justification for making the stop." *United States v. Whitfield*, 634 F.3d 741, 744 (3d Cir. 2010) (internal quotation marks omitted).

Therefore, if Defendants had probable cause (or reasonable suspicion in the case of Cost, Jr.'s detention), "then no constitutional violation took place [regarding Plaintiffs' claims for false arrest/false imprisonment, unlawful search and seizure, and malicious prosecution]." *Lawson*, 42 F.Supp.3d at 673. No doubt that, "[g]enerally, the question of probable cause in a section 1983 damage suit is one for the jury," which "is particularly true where the probable cause determination rests on credibility conflicts." *Id.* (internal quotation marks omitted). "However, a district court may conclude that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding, and may enter summary judgment accordingly." *Id.* (internal quotation marks omitted). It is the court's function "to determine whether the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense was being committed." *Price*, 2016 WL 3876442, at *5 (internal quotation marks omitted).

As to the Plaintiffs' claims of unlawful search and seizure of their persons, they argue that neither of them should have been handcuffed or arrested since "they had not committed in [sic] crime in the privacy of their own home." (Doc. 22, at 6). As to Cost, Jr., Plaintiffs emphasize that he was not charged or cited with a crime, apparently in support of the argument that his detention was illegal. As to Cost, Sr., Plaintiffs argue that because the Officers only testified to hearing a female voice when they arrived on scene, they did not have probable cause to arrest him for disorderly since they did not personally hear Cost, Sr. yelling. Plaintiffs contend that, even if Officers had heard Cost, Sr. from inside of his house, because he was speaking "in the privacy of his own home," this could not have formed the basis for probable cause to arrest him on disorderly conduct because, "as a matter of law, anything said in the home is not evidence that could be used against him for the charge of disorderly conduct." (Doc. 46, at 3).

In support of their argument that the conduct inside one's home cannot serve as the basis of a disorderly conduct charge, Plaintiffs rely on *Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995). There, the plaintiff sued the police officers that arrested him for, among other things, disorderly conduct after he was involved in a physical altercation with a police officer inside of his home. The Third Circuit observed that the New Jersey

statute for disorderly conduct necessitated that the conduct occur in public and, pursuant to New Jersey courts' interpretation of the statute, one could not be charged under it for conduct that took place on one's own property. *Id.* at 635-36.

Conversely, Defendants argue that the brief detention of Cost, Jr. was reasonable in light of the circumstances, since he was only detained momentarily to maintain the *status quo* while the Officers ascertained his identity and determined whether any danger existed elsewhere in the residence. Defendants point out that the Officers did not initially know who was involved in the argument reported in the 911 call and therefore it was reasonable for Cost, Jr. to be briefly detained in order to identify and question him. Once Cost, Jr. revealed his identity and it was determined that he had not committed any crime, Defendants note that his handcuffs were promptly removed. Accordingly, Defendants argue that Cost, Jr.'s unlawful search and seizure claim must fail because it was objectively reasonable to detain him under the circumstances.

With respect to Cost, Sr., Defendants argue that probable cause existed to arrest him for disorderly conduct in light of the undisputed fact that Rought relayed to the Officers that Cost, Sr. had engaged in a loud argument with his daughter for approximately 30 minutes, which continued until the

Officers approached the house, and because the argument annoyed and alarmed Plaintiffs' neighbors enough to seek police intervention. Defendants assert that the fact Cost, Sr. was inside his residence is immaterial given that his conduct affected the immediate neighborhood, including the Giedieviells and other surrounding homes, which qualifies as affecting the public. *See* 18 Pa.C.S. §5503(c) ("[P]ublic" means affecting or likely to affect persons in a place. . . includ[ing] . . . any neighborhood, or any premises which are open to the public."). Defendants argue that, under Plaintiffs' reasoning, anything a resident does in his home, without exception, could not qualify as disorderly conduct regardless of its effect on the outside public. This, Defendants argue, is contrary to the plain text of the statute, which states that fighting in a manner that recklessly creates a risk of public annoyance or alarm constitutes disorderly conduct.

Here, the court finds that the probable cause/reasonable suspicion determination does not rest on credibility determinations and that, in viewing the evidence in the light most favorable to Plaintiffs, no genuine dispute of material fact exists as to whether the Officers, based upon the facts known to them at the time, had reasonable suspicion to detain Cost, Jr. and probable cause to arrest Cost, Sr.

As to Cost, Jr., the facts and reasonable inferences that the Officers were presented with warranted reasonable suspicion that he committed a crime which injured the female resident of the house and caused her to yell "stop," or that he posed a threat to the Officers' safety. Cost, Jr.'s brief detention was thus not violative of the Fourth Amendment. With respect to the arrest of Cost, Sr., the objective facts available to the Officers at the time of the arrest, including the 911 caller's report of domestic dispute, Rought's statement that Cost, Sr. had been arguing with their daughter, and the yelling that the Officers themselves heard upon arrival at the scene, "were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense"—to wit, disorderly conduct. *Beck v. Ohio*, 379 U.S. 89, 91 (1964). Although Plaintiffs repeatedly argue that the Officers did not testify to hearing Cost, Sr. yelling from inside of his home, there is no requirement that an arresting officer personally witness the crime for which he is arresting a suspect. *See Dreibelbis v. Clark*, __ Fed.App'x ___, 2020 WL 2185280, at *2 (3d Cir. May 6, 2020) (holding that a trooper had probable cause to cite a defendant for disorderly conduct based upon reports from witnesses that the defendant was yelling, shouting, and attempted to push past a security guard); *Wright v. City of Philadelphia*, 409 F.3d 595, 601-02 (3d Cir. 2005) ("[A]ll interpretations of probable cause require a belief of guilt

that is reasonable, as opposed to certain." (internal quotation marks omitted)).

Finally, although Plaintiffs argue that, pursuant to *Groman*, it was *per se* unreasonable to charge Cost, Sr. with disorderly conduct because his conduct occurred inside of his home and not in "public," *Groman* is inapposite. *Groman* observed that "[a] disorderly conduct charge under [New Jersey law] requires that the behavior have been in 'public'" and, thus, the plaintiff "could not have committed the offense . . . in his own home." *Id.*, 47 F.3d at 635 (quoting N.J. Stat. §2C:33-2).[5,6]

_____

[5] It appears that the plaintiff in *Groman* was charged under the subsection of the New Jersey statute pertaining to "Offensive language," which specifically required that the conduct occur "in a public place." N.J. Stat. §2C:33-2(b).

[6] Although Plaintiffs do not develop the argument, the court notes in passing that, in a footnote, *Groman* cited Pennsylvania's disorderly conduct statute, suggesting that it too may require the conduct to be public. In doing so, the court cited the Pennsylvania Superior Court case *Commonwealth v. Weiss*, 490 A.2d 853 (Pa.Super.1985), wherein the court found that the "public" requirement was not satisfied where the defendant screamed epithets at police officers after they broke down her door to arrest her husband. The *Groman* commentary on the Pennsylvania disorderly conduct statute, however, is of little value in resolving the present issue of whether the Officers possessed probable cause for several reasons. First, neither party has addressed either *Groman* footnote or the *Weiss* case. Further, not only was *Groman*'s footnote discussion of the statute *dictum* insofar as the issue of its requirements were not before the court, but, significantly, *Weiss*, as an intermediate Pennsylvania court decision, is not binding on federal courts. Finally, it is noteworthy that *Weiss* presented a markedly different factual scenario than the instant case. Whereas the *Weiss* defendant's

Unlike that statute, nothing in Pennsylvania's disorderly conduct statute specifically requires that the suspect's actions occur public. Instead, it merely requires that a person, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, . . . engage[] in fighting or threatening, or in violent or tumultuous behavior." 18 Pa.C.S. §5503(a). The statute further provides,

> As used in this section the word 'public' means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, apartment houses, places of business or amusement, any neighborhood, or any premises which are open to the public.

18 Pa.C.S. §5503(c).

Here, the court concludes that there was sufficient probable cause to support the arrest of Cost, Sr. for disorderly conduct. At the time of the arrest, the Officers were aware that a neighbor reported a male/female domestic fight at Plaintiffs' house, they personally heard yelling coming from the house upon arrival, and Rought confirmed that a loud fight had occurred between Cost, Sr. and his daughter. This "reasonably trustworthy information [and]

---

disorderly conduct was directed at the police and was exclusively in response to the police breaking down her door, Cost, Sr.'s disorderly conduct occurred prior to the police's arrival and, indeed, it is what caused neighbors to call police to his residence in the first place.

circumstances within the [Officers'] knowledge," would have been sufficient to warrant a person of reasonable caution to conclude that Cost, Sr. committed the offense of disorderly conduct—that is, engaging in fighting in such a manner that recklessly caused public annoyance or alarm. Accordingly, the court concludes that, as a matter of law, probable cause for Cost, Sr.'s arrest existed.

As to the warrantless entry, Plaintiffs contend that there were no exigent circumstances to justify the forced entry. Citing Rought's affidavit that she never screamed "help" or "stop," Plaintiffs assert that when the Officers arrived on scene, no one was screaming for help. As throughout their briefing, Plaintiffs focus on the fact that Cost, Sr. was only charged with disorderly conduct, a "minor summary offense," which was later dropped. (Doc. 46, at 7). Plaintiffs further argue, "Given the fact that the alleged crime was minor and not a felony and there was no evidence on scene of any one [sic] crying, blood [sic] or requesting assistance, there was no justification for [Officer] Ranakoski to break down Plaintiffs' home door." (Doc. 46, at 7). Thus, Plaintiffs frame the situation as one in which the Officers broke down Plaintiffs' door in order to arrest Cost, Sr. for the predetermined charge of disorderly conduct despite knowing they lacked probable cause to do so.

Defendants, conversely, argue that the entry into Plaintiffs' residence was justified by exigent circumstances—to wit, in the context of responding to a report of a domestic dispute, a woman was yelling "stop" when police arrived on scene and all noise ceased when the Officers approached the house, causing them to believe that someone inside was in immediate danger. Defendants note that the evaluation of the legality of a warrantless search must be made in the context of the totality of the circumstances and cite the incident report which indicated that the 911 caller reported a male/female domestic dispute with crying children.

"Warrantless searches and seizures inside someone's home . . . are presumptively unreasonable unless the occupants consent or probable cause and exigent circumstances exist to justify the intrusion." *United States v. Coles*, 437 F.3d 361, 365 (3d Cir. 2006) (emphasis omitted). Whether exigent circumstances justify a warrantless search or seizure is determined from the totality of the circumstances, as they were reasonably known to, or discoverable by, officers at the time of the entry. *Parkhurst v. Trapp*, 77 F.3d 707, 711 (3d Cir. 1996). This determination is made on a case-by-case basis and focuses simply on what a reasonable, experienced police officer would believe given the circumstances. *United States v. Reed*, 935 F.2d 641, 643

(4th Cir. 1991); *United States v. Williams*, 431 F.3d 1115, 1118 (8th Cir. 2005).

In defining exigent circumstances, the Supreme Court has identified four circumstances that justify a warrantless intrusion into a person's home: (1) hot pursuit of a fleeing felon; (2) imminent destruction of evidence; (3) the need to prevent a suspect's escape; or (4) the risk of danger to the police or other persons inside or outside the dwelling. *See Minnesota v. Olson*, 495 U.S. 91, 100 (1990).

Here, based upon the undisputed material facts of record, the court agrees with Defendants that probable cause and exigent circumstances supported the warrantless entry into Plaintiffs' home. Once again, Officer Ranakoski and Officer McMorrow both testified that they heard a female screaming "stop" when they arrived at the house, and that the yelling ceased when they approached the door. (Doc. 25-7, at 4; Doc. 25-8, at 4). Although Plaintiffs attempt to contest this fact by citing to Rought's affidavit wherein she states she did not yell "stop" or "help," as Defendants observe, the Officers did not claim to know which of the female residents of the house

they heard yelling and, moreover, the parties agree the fight was between Cost, Sr. and his daughter—not Rought.[7]

Furthermore, it is significant that these events took place in the context of responding to a call for a domestic dispute. Plaintiff's notion that the Officers knew precisely what they would find upon entering the home in that they knew they would find no one was injured or that they would ultimately only arrest Cost, Sr. for disorderly conduct strains credulity. Plaintiffs cannot reasonably deny that the police incident report indicated that the caller reported a domestic dispute with children crying.[8] (Doc. 25-3, at 5). Although

---

[7] When asked about the Officers' testimony that they heard a female yelling, Cost, Sr. stated he did not hear anyone yelling "stop" or "help" after police arrived. (Doc. 21, at 9). However, this likewise does not rebut the Officers' testimony since it does not put into dispute what the Officers heard. Regardless of what Plaintiffs state they personally did or did not hear, the fact remains that the Officers' testified that they heard yelling and a female shouting "stop" several times when they arrived at the residence. Thus, Cost, Sr.'s testimony means only that he did not hear the shouting from his own house—not that the shouting did not occur.

[8] Although Plaintiffs deny this in their response to Defendants' statement of facts on the basis that it is inadmissible hearsay, this argument is meritless. (Doc. 43, at 6-7). First, the statements in the incident report are not hearsay to the extent that they are being offered to show the effect on the listeners—Officers Ranakoski and McMorrow. Moreover, even if it were, "hearsay evidence proffered in support or opposition to summary judgment may be considered if the out-of-court declarant could later present that evidence through direct testimony, *i.e.*, 'in a form that would be admissible at trial.'" *Williams v. Borough of West Chester*, 891 F.2d 458, 466 n.12 (3d Cir. 1989).

Plaintiffs assert that the neighbor who made the 911 call was disgruntled, as Plaintiffs themselves argue, the Officers did not speak with the Giedieviells prior to making entry and there is no allegation that the Officers knew the identity of the 911 caller upon responding to the call or that they were aware of any previous issues between the Plaintiffs and the Giedieviells.

Plaintiffs additionally argue that exigent circumstances exist only when there are signs of medical distress, loss of blood, or violence; however, they are incorrect. "Exigent circumstances exist where officers reasonably . . . believe that someone is in imminent danger," which is what occurred here. *Couden v. Duffy*, 446 F.3d 483, 496 (3d Cir. 2006) (internal quotation marks omitted). Indeed, the Third Circuit has upheld a finding of exigent circumstances where police officers testified to observing "*what they believed* to be underage drinking and violation of a noise ordinance." *See Noone v. City of Ocean City*, 60 Fed.App'x 904, 910 (3d Cir. 2003) (emphasis added). The court held that "[t]he governmental interest in abating these illegal activities justified warrantless entry into [the plaintiff's] property" and, accordingly, summary judgment in favor of the defendant police officers was warranted.

Finally, Plaintiffs argue that the Officers lacked probable cause because the Officers did not speak with the Giedieviells on the night of the

incident and, thus, what the Giedieviells heard is irrelevant since they did not communicate it to the Officers. However, this argument likewise fails, given that the question of whether probable cause existed is measured from the time that the Officers took the actions in question. The fact that the Officers did not first pause to interview neighbors before forcing entry only supports their testimony that they believed someone inside the residence was in imminent danger. The warrantless entry thus did not violate the Fourth Amendment.

Therefore, in light of these facts, the court concludes that the Officers had probable cause to believe that a crime was being committed inside Plaintiffs' residence because, based upon the totality of the circumstances, a reasonable officer in their position would have perceived someone inside Plaintiffs' residence to be in need of immediate help. Thus, the court concludes as a matter of law that probable cause and exigent circumstances justified the warrantless entry into Plaintiffs' home.

Having concluded that the Officers possessed reasonable suspicion to detain Cost, Jr., probable cause to arrest Cost, Sr., and that probable cause and exigent circumstances supported the warrantless entry, and thus that there was no violations of Plaintiffs' Fourth Amendment rights, their claims for unlawful search and seizure, false imprisonment/false arrest, and

malicious prosecution fail as a matter of law. *See Sheedy*, 184 Fed.App'x at 284. Accordingly, summary judgment in favor of Defendants on Plaintiffs' federal claims in Counts I, IV, and V is **GRANTED**.

### 2. Count II: Excessive Force

Defendants alone seek summary judgment on Count II, arguing that the undisputed evidence of record shows that Plaintiffs were merely handcuffed and placed on their knees by Officer Ranakoski immediately after forcible entry into the residence was made. Defendants emphasize that Cost, Jr.'s detention was particularly brief, since he was released promptly after he identified himself. In light of these facts, Defendants argue that the *de minimus* force used was objectively reasonable under the circumstances and "cannot possibly be construed as [the use of] excessive force upon either Plaintiff." (Doc. 39, at 30).

Plaintiffs, by contrast, argue that Defendants used excessive force because they were forced to their knees and handcuffed "for no reason since they were sitting at their dining room table doing nothing illegal." (Doc. 46, at 12). Plaintiffs contend that, because they were not doing anything threatening when the Officers encountered them, any force used against them was, in and of itself, excessive.

"The use of excessive force is itself an unlawful 'seizure' under the Fourth Amendment." *Couden*, 446 F.3d at 496. In deciding whether the challenged conduct constitutes excessive force, "a court must determine the objective reasonableness of the challenged conduct, considering the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 496-97 (internal quotation marks omitted). "Other factors include the duration of the [officer's] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Id.* at 497 (internal quotation marks omitted).

> In evaluating reasonableness, the court must take into consideration the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Thus, the court should not apply "the 20/20 vision of hindsight," but should instead consider the "perspective of a reasonable officer on the scene."

*Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).

Here, the court will grant summary judgment in Defendants' favor because, in light of the undisputed material facts, Plaintiffs have not produced

evidence such that a reasonable jury could find that the Officers employed unreasonable force. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986). As discussed in depth above, the record reflects that, when the Officers arrived, they were faced with a female yelling in distress in the context of responding to a domestic dispute call. Upon encountering Plaintiffs, the Officers had no way of knowing whether they were residents of the house or strangers who had just broken in and harmed the residents, nor could they have known whether there were additional suspects in the home. The fact that the Officers had to contend with two suspects—the Plaintiffs— in addition the possibility of unknown others strongly indicates that detaining Plaintiffs with handcuffs was eminently reasonable.

Even if Plaintiffs could show that the Officers knew Plaintiffs were in fact residents of the house, once again, the Officers had no way of knowing whether they were armed or had just committed a violent crime against someone else in the home.[9] Thus, given these facts, the court finds that it was objectively reasonable for Officers to neutralize the potential immediate risk Plaintiffs posed to them by immobilizing Plaintiffs with handcuffs while a *Terry* search of the remainder of the house was conducted.

---

[9] In fact, Cost, Jr. did not identify himself until after he was handcuffed and Cost, Sr. refused to identify himself until he was transported to the processing center.

With respect to the duration of the force, Cost, Jr. was handcuffed only briefly until he identified himself. Cost, Sr. refused to identify himself and, after the Officers interviewed Rought, he was charged with disorderly conduct, transported in handcuffs to the processing center for a suspect identification, and released. The fact that the use of force here was merely detention in handcuffs and was only as long as was necessary to neutralize any threat in the house and to ascertain Plaintiffs' identities, again strongly suggests that the use of force was objectively reasonable. *See Boardmand v. City of Philadelphia*, 661 Fed.App'x 183, 189-90 (3d Cir. 2016) (declining to find that the court erred in instructing the jury that "handcuffing without more does not constitute excessive force"). Accordingly, because all pertinent factors in determining whether the use of force was excessive weigh in favor of the objective reasonableness of the Officers' actions, the court finds that, in light of the evidence produced by Plaintiffs, no reasonable jury would find that the use of force by the Officers against either Cost, Sr. or Cost Jr. was objectively unreasonable under the circumstances such that it could be considered excessive and a violation of the Fourth Amendment. Therefore, summary judgment is **GRANTED** in favor of Defendants on Count II.

### 3. Count VI: Inadequate Supervision and Training

With respect to Plaintiffs' Count VI *Monell* claims against Dickson City

for failing to adequate train its officers as to the probable cause requirement

for arrest, since the court has found no violations of Plaintiffs' constitutional

rights by either Officer Ranakoski or Officer McMorrow, summary judgment

in favor of Dickson City is **GRANTED** on this count. *See Williams v. Borough*

*of West Chester*, 891 F.2d 458, 467 (3d Cir. 1989) (In general, as a matter of

law, a *Monell* claim against a municipal defendant cannot proceed where

plaintiff has failed to show he suffered a constitutional violation.).[10]

### 4. Count III: Assault and Battery; Count IV: State Law False Arrest and False Imprisonment

Because the court has entered summary judgment on all of Plaintiffs'

federal claims, it will decline to exercise supplemental jurisdiction over their

remaining state law claims in Count III for assault and battery and Count IV

---

[10] In support, Plaintiffs cite another case before this court, *Raj v. Dickson City Borough*, No. 17-0692, 2018 WL 571949, at *3-4 (M.D.Pa. Jan. 26, 2018) (denying a motion to dismiss), in which the plaintiff brings a *Monell* claim against Dickson City. The merits of that case, however, were ultimately decided against the plaintiff. More importantly, as Plaintiffs' counsel should be aware, allegations in a complaint are just that, allegations, until proven on the merits. The mere fact Dickson City has previously been sued under the same legal theory certainly does not stand for the proposition that Dickson City "has a custom of illegally seizing people without probable cause or reasonable suspicion," as Plaintiffs contend. (Doc. 22, at 11-12).

for false arrest and false imprisonment, and these claims are **DISMISSED WITHOUT PREJUDICE**. *See* 28 U.S.C. §1367(c)(3); *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir.1995) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.").

## IV.   CONCLUSION

For the reasons set forth above, Plaintiffs' Count I Fourteenth Amendment claims are **DISMISSED WITH PREJUDICE**. Defendants' motion for summary judgment, (Doc. 24), is **GRANTED** with respect to Plaintiffs' federal claims in Counts I, II, IV, V, and VI, and judgment is entered in favor of Defendants and against Plaintiffs on these claims. Plaintiffs' state law claims against Defendants in Counts III, IV, and V are **DISMISSED WITHOUT PREJUDICE**. Finally, Plaintiffs motion for summary judgment, (Doc. 17), is **DENIED**. An appropriate order will issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: October 15, 2020**
18-1494-02

- 31 -